## American Car & Foundry Company v. Charles Draper.

CUSTOM—*when competent upon question of negligence.* A general custom with respect to the manner of performing particular work which is continued for so long a time that the master either knew of its existence or could have known thereof in the exercise of ordinary care, is competent upon the question of negligence.

Action in case for personal injuries. Appeal from the Circuit Court of Madison County; the Hon. CHARLES T. MOORE, Judge, presiding. Heard in this court at the February term, 1907. Affirmed. Opinion filed September 13, 1907.

WISE & McNULTY, for appellant.

J. M. BANDY and KEEFE & SULLIVAN, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

The declaration upon which this case was tried charged that on the 26th day of July, 1905, and for a long time prior thereto, appellant was possessed of and operating a plant for the manufacture of railroad cars in Madison county, Illinois, and used in connection therewith, certain railroad tracks upon which its cars were moved; that appellee was a servant of appellant, working on trucks underneath cars on appellant's tracks, and at the time of his injury was passing under the draw-head connecting two cars, standing on one of the tracks near the track where appellee had been working; that the fact that its servants were accustomed to pass between and under the cars where appellee was injured in going about their usual duties, and in going to and from their work, was known to appellant or should have been known by the use of ordinary care; that appellant had an established rule that cars standing on any of said tracks, where said servants were required to work and between which they passed, in the performance of their work, and in going to and from their work, would not be moved until such servants were notified of the intention of moving such cars; that it was the duty of appellant to avoid moving such cars without notice; that appellee while he and other servants were passing between and under two of the cars, standing on one of said tracks, preparatory to going to their evening meal, and while exercising due care, was injured, by means of an engine in charge of other servants of appellant, not fellow-servants of appellee, moving the cars between and under which he was passing.

The trial resulted in a verdict and judgment in favor of appellee.

Appellant contends that appellee failed to make out his case as averred in the declaration, and that the court admitted improper evidence. It appeared from the proofs that appellant was operating an extensive factory for the manufacture of railway freight cars, in Madison, Illinois. It had in connection with the factory a large number of railroad tracks, certain of which located outside of the sheds or

buildings, were known as shipping tracks, where bolts were tightened, brakes and couplers adjusted and other work done in completing the cars. Appellee worked with those men who were engaged in finishing the cars upon the shipping track. At the time he was injured, a new building called the "New Steel Plant" was being constructed in the yards. Immediately west of this building, as appears from the plat in evidence, there were five railroad tracks, the nearest to the building being known as No. 15 and the others in order as Nos. 16, 17, 18 and 19. These tracks all ran north and south, and connected at the north end with what was known as a lead track. Appellant claimed that tracks Nos. 17 and 18 were devoted specially to the business of finishing cars and that 16 and 19 were occasionally used for that purpose, while appellee claimed that all of the tracks mentioned, including No. 15, were at times used in completing cars. The new building was open so employees could pass through it, and east and south of it was the place where the employees got their supplies. It appears to have been the custom of the employees working on tracks Nos. 17 and 18, while going to and from their work, and for supplies, to cross directly east over the tracks between the place where they were at work, and the place where the supplies were kept; and when the intervening tracks were full of cars, the employees would climb over or under or go between them. Appellant had a custom which required switchmen coming in with a switch engine, upon any one of certain tracks, to walk ahead of the engine and give a warning in a loud voice, notifying all persons at work on that track, to get out of the way. It is insisted by appellant that this rule applied only to tracks 17 and 18, while it is as strongly insisted on the part of appellee, that the custom applied equally to all of the other tracks named, and also that it was the established custom that the cars on said tracks, upon which the men worked and through and under which they passed while at work, and while going to and from their work, would not be moved without notice. On the day of the injury, appellee, who had been in the employ of appellant about four weeks, was engaged with some 25 or 30

other men at work upon certain cars on track 17.  At about 5 :40 P. M. the whistle blew and the men stopped work, it being their intention to get their suppers and then to return to do extra work during the evening.  Appellee went to the locker between tracks Nos. 18 and 19 and then started east toward the new building, with the other men, among whom was the foreman, who had charge of that gang of men, to track 15.  When the men reached track 15 they found it filled with a string of 20 or 30 cars connected together and extending 4 or 5 car lengths south of the new building.  Appellee and certain others of the men at once commenced passing under the coupling of two cars.  While appellee was under the coupling, an engine with some cars came in from the lead track and struck against the standing cars, causing them to move and he was knocked down and injured.

Appellant claims that appellee did not make out the case averred in the declaration for the reason that he failed to prove there was any established rule, requiring notice to be given him before cars were moved on track 15, and also for the reason that he was himself guilty of negligence in going between the cars on that track.

Appellee and witnesses produced by him swore it was the custom to give notice to the men whenever cars were to be moved on any of the tracks and that this notice was given by the switchman who called out a warning, while appellant introduced witnesses who testified to facts tending to show that this rule did not apply to tracks other than 17 and 18, except when a blue flag was placed at the north end of such tracks and that when track No. 15 was used as a storage track it was not customary to place any flag there whatever.

The position of appellee is strengthened somewhat by the fact that the switchman, Diebert, who was with the crew which brought the engine and cars in on track 15 at the time of the injury and was called as a witness by appellant, testified there was an opening between the cars about 20 feet north of the steel plant building; that he went south along the line of cars on track 15 at that time, until he came to the north end of the 16th car from the south end of the line;

that he got on a pile of iron, looked south and shouted "look out on 15"; that he did not notice any one and turned around and gave the signal to close the crossing.

The question therefore as to whether the rule required notice to be given before cars were moved on track 15, was a closely contested one and it was for the jury to decide where the preponderance of the evidence lay. Appellee in passing between the cars and under the couplers on track 15, appears from the evidence to have been following a general custom in use by himself and his fellow workmen. This practice was so open and had been so long continued that it was either known to appellant or could have been known to it by the use of ordinary care. In fact the foreman of appellee's gang was with the men at the time the injury occurred. From these circumstances and all the other facts and circumstances in evidence it was for the jury to say whether or not appellee was in the exercise of ordinary care for his own safety at the time he was injured.

The objection to the admission of evidence is that the court permitted appellee and several other witnesses to testify that in going from track 17 to the storeroom for supplies, the men would pass over track 15; it being insisted that at the time he was injured, appellee was going to his supper and not going for repairs, and it was therefore immaterial what use was made of the track at other times. We think this evidence was admissible. It tended to show the general custom of the men in regard to passing over the track and had a bearing upon the question whether appellant knew or ought to have known of the use that was being made of the same, and whether it should have taken precautions to guard against probable injury by cars moving upon that track. It also had a bearing upon the question whether appellee in following the custom was guilty of negligence.

The record discloses no errors in the trial of this cause and as there was evidence warranting the jury in finding for appellee, the judgment of the court below will be affirmed.

*Affirmed.*